# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| YA JELANI SIMBA, Plaintiff, pro se, v. WENDY BRANCH, et al., Defendants. | **MEMORANDUM OPINION AND RECOMMENDATION** 1:07CV712 |

This matter is before the court on a motion to dismiss by Defendants (docket no. 16). Plaintiff has responded in opposition to the motion, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; therefore, I must deal with the motion to dismiss by way of recommendation. For the following reasons, it will be recommended that the court grant Defendants' motion to dismiss. It will be further recommended that the court enter a prefiling injunction enjoining Plaintiff from filing any additional ETS exposure claim lawsuits without first obtaining permission by the court. Since Plaintiff has the right to notice and the opportunity to be heard before a prefiling injunction is imposed, Plaintiff will be given 20 days in which to submit a brief stating reasons why the court should not enter a prefiling injunction against him.

**BACKGROUND**

Pro se Plaintiff Ya Jelani Simba,[1] a state inmate serving a life sentence, is no stranger to the federal courts. He has filed a glut of environmental tobacco smoke ("ETS") lawsuits in this and other districts in North Carolina, complaining that prison employees are violating his constitutional rights by refusing to enforce the no-smoking rules in the state prisons to his satisfaction.[2] A review of Plaintiff's prior ETS litigation is appropriate before proceeding with a discussion of the allegations in this case.

<u>Plaintiff's Prior Lawsuits Alleging Eighth Amendment Violations Based on ETS Exposure</u>

Plaintiff has filed various lawsuits in each federal judicial district in this State in which he has asserted Eighth Amendment deliberate indifference claims related to alleged Environmental Tobacco Smoke ("ETS") exposure in most, if not all, of the correctional facilities in which he has been incarcerated while serving his life sentence. First, in *Simba v. Hunt*, filed in the Eastern District of North Carolina on September 8, 1998, Plaintiff asserted damages arising out of alleged exposure to ETS while incarcerated at Pender Correctional Institution beginning in 1997. (No. 5:98-CT-691-F, E.D.N.C.) In that case, Plaintiff alleged, among other things, that he

---

[1] Plaintiff is also known as Joseph H. Shaw.

[2] Since January 1, 2006, smoking has been banned inside all North Carolina Department of Corrections buildings pursuant to N.C. GEN. STAT. § 148-23.1.

was allergic to cigarette smoke and that his health was being detrimentally affected by exposure to ETS.[3] Plaintiff, proceeding *in forma pauperis*, named at least 30 defendants in his lawsuit, ranging from the then Governor Hunt to various North Carolina Department of Corrections employees, including, for instance, correctional officers, an administrative assistant, and a nurse. On September 26, 2007, the Eastern District of North Carolina granted the defendants' motion for summary judgment as to all claims brought by Plaintiff, including his ETS claims. In its opinion, the court found that Plaintiff failed to proffer sufficient evidence to show that he was exposed to objectively unreasonable levels of ETS. The court further found that, in any event, Plaintiff had not shown that the defendants were deliberately indifferent to his ETS exposure. (No. 5:98-CT-691-F(3), E.D.N.C., docket no. 160, Order, p. 10.) Plaintiff's appeal to the Fourth Circuit in that case is pending. *See* No. 07-7567.

Next, in *Simba v. Thompson*, filed in the Eastern District of North Carolina on July 2, 1999, Plaintiff, while proceeding *in forma pauperis*, again asserted health problems arising from ETS exposure, this time while incarcerated at Pamlico Correctional Institution beginning in October 1998. (5:99-CT-433-F, E.D.N.C.) Plaintiff named 18 defendants in that lawsuit. On April 1, 2002, the Eastern District of North Carolina granted the defendants' motion for summary judgment related to Plaintiff's alleged ETS exposure at Pamlico Correctional Institution. (*Id.*, docket no.

---

[3] Plaintiff also asserted that his constitutional rights were violated because prison employees denied him use of an alleged "medically prescribed" pillow and denied his requests for certain books.

3

97.) In granting summary judgment, the court adopted a prior Recommendation by a magistrate judge, in which the magistrate judge found that "Plaintiff has provided no evidence, save his complaints regarding his symptoms which demonstrate that his physical health was affected by ETS exposure." (*Id.*, docket 93, p. 11.) The magistrate judge further found that, in any event, Plaintiff had not shown that the defendants knew or should have known that Plaintiff had an existing condition that was either caused or aggravated by exposure to ETS. (*See id.*, p. 16.) The Fourth Circuit affirmed (02-6626, Sept. 22, 2004), and the Supreme Court denied certiorari (04-6983, Jan. 14, 2005).

Next, in *Simba v. Walker,* filed in the Western District of North Carolina on September 11, 2002, Plaintiff, proceeding *in forma pauperis*, asserted ETS claims against more than 100 defendants, alleging that he suffered due to his exposure and chronic aversion to ETS while confined in at least seven different North Carolina correctional facilities between October 1999 and continuing through August 2002. (1:02-CV-211-03-MU, W.D.N.C.) On February 14, 2007, the Western District of North Carolina court granted summary judgment to, or dismissed, all defendants. The court found, among other things, that Plaintiff failed to present evidence that he suffers from a medical condition that is either serious or directly related to ETS exposure. (No. 1:02-CV-211 (W.D.N.C.), docket no. 236, p. 58.) The Fourth Circuit affirmed. (No. 07-6293, 4th Cir., judgment entered July 12, 2007, mandate issued Sept. 7, 2007). Petitioner's petition for certiorari to the Supreme Court is pending.

4

Finally, Plaintiff's most recent ETS lawsuit, other than this one, is *Simba v. Kenworthy*, filed in the Eastern District of North Carolina on January 10, 2007. (5:07-CT-3004-FL, E.D.N.C.) In the complaint in that case, Plaintiff, proceeding *in forma pauperis*, alleged that he was exposed to ETS while incarcerated at Lumberton Correctional Institution beginning on October 12, 2005.[4] On March 20, 2008, the Eastern District of North Carolina granted summary judgment to all of the defendants in that case. In its order, the court specifically found that Plaintiff failed to show that the defendants were deliberately indifferent to Plaintiff's alleged exposure to ETS. (*Id.*, docket no. 34, Order, p. 6.) The court did not address whether Plaintiff had shown that he was exposed to unreasonably high levels of ETS.

Plaintiff's Claims in this Lawsuit

The claims made in this lawsuit were first made under file number 1:06-CV-310 (M.D.N.C.), which this court dismissed without prejudice on April 11, 2006, because, among other reasons, the complaint did not contain allegations that are simple, concise, and direct. Plaintiff filed a motion for Rule 60 relief, which this court denied. Plaintiff appealed to the Fourth Circuit, which dismissed the appeal on January 5, 2007 (06-7716). Plaintiff refiled his claims under file number 1:06-CV-838 (M.D.N.C.), which this court again dismissed without prejudice on October 3,

---

[4] The court's summary judgment order indicates that Plaintiff was in fact transferred to Lumberton on October 12, 2006. (No. 5:07-CT-3004-FL, E.D.N.C., docket no. 34, Order, p. 2, n.2.)

5

2006, because the complaint contained the same defects. Plaintiff appealed to the Fourth Circuit, which again dismissed the appeal (06-7753) on January 5, 2007. Plaintiff then refiled his claims under file number 1:06-CV-888 (M.D.N.C.). The court again dismissed the complaint on October 12, 2006, because it contained the same defects. Finally, on September 26, 2007, Plaintiff refiled his claims under the current caption number. As with his previous lawsuits, Plaintiff alleges a violation of his Eighth Amendment rights based on his alleged exposure to ETS. Here, he alleges that he was exposed to ETS while incarcerated at Scotland Correctional Institution from September 22, 2004, to October 12, 2006. He has named no less than 36 employees of the North Carolina Department of Corrections as Defendants. He alleges that Defendants were aware of his "serious medical condition" but nevertheless allowed unauthorized smoking at Scotland.[5]

## DISCUSSION

### Standard of Review–Motion to Dismiss

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken

---

[5] Plaintiff is no longer incarcerated at Scotland. Therefore, his demands for declaratory and injunctive relief are moot, and only his claim for monetary damages survives.

as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and alteration omitted). With these principles in mind, the court now turns to Defendants' motion to dismiss Plaintiff's Eighth Amendment claim based on alleged ETS exposure.

A prisoner has no absolute constitutional right to a smoke-free environment. *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998). A prisoner's exposure to second-hand smoke may, however, give rise to an Eighth Amendment claim if, objectively, he is exposed to unreasonable levels of ETS, and, subjectively,

7

prison authorities are deliberately indifferent to the exposure. *See Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). The Supreme Court has held that, with respect to the first, objective factor:

> determining whether [a prisoner's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36 (emphasis in original). Defendants contend that Plaintiff has not alleged that the ETS to which he was exposed was so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to it. Defendants contend that, instead, Plaintiff alleges that he suffers from a serious medical condition, that each named Defendant was aware of his condition, and that because of his serious medical condition, the level of ETS exposure was unreasonable *for him*. Defendants contend that Plaintiff has therefore not alleged the threshold requirement for stating an Eighth Amendment claim based on ETS exposure. Defendants further contend that, in any event, Plaintiff's allegations contradict the following facts found by the court in *Simba v. Walker,* 1:02-CV-211-03-MU, a prior ETS case brought by Plaintiff in the Western District of North Carolina (and discussed above):

> Plaintiff has failed to allege facts sufficient to support a finding that he suffers from a medical condition that is either serious or directly related

> to ETS. Plaintiff has also failed to allege facts that would support an
> inference that his future health has been jeopardized by his exposure
> to ETS. The Plaintiff's own exhibits, his voluminous sick call catalog,
> and his medical record, do not support these inferences. In addition,
> there is a consensus among all of those medical personnel to have
> treated Plaintiff among various institutions that ETS has not caused or
> aggravated an existing condition, nor has it increased unacceptable
> risks to his health. Plaintiff's failure on the objective element entitles
> Defendants to summary judgment on claims of deliberate indifference
> to a serious medical condition or risk of harm to future health.

(No. 1:02-CV-211 (W.D.N.C.), docket no. 236, p. 58.) The Western District's opinion was entered February 14, 2007. Defendants contend that because Plaintiff had the opportunity to fully litigate the issue of his medical condition in a prior proceeding that ended in a final judgment and because Plaintiff has not forecast objective evidence here that would show that his medical condition has materially changed since that finding, that finding should be binding on Plaintiff through the doctrine of collateral estoppel. *See Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994).

First, I do not agree with Defendants that the findings of the Western District of North Carolina court should be binding on this court through the doctrine of collateral estoppel. Plaintiff's claims in that case related to alleged exposure to ETS while confined at seven different North Carolina correctional facilities beginning in October 1999 and continuing through August 2002. By contrast, Plaintiff's claims in this lawsuit relate to alleged exposure to ETS while incarcerated at Scotland Correctional Institution from September 22, 2004, to October 12, 2006. Therefore, the findings from *Simba v. Walker* regarding Plaintiff's alleged injury in that lawsuit

9

only apply to injury incurred between October 1999 and continuing through August 2002 in the correctional facilities named in that lawsuit.

Nevertheless, Plaintiff's prior ETS lawsuits are relevant because they clearly indicate a pattern–that is, Plaintiff is making a habit out of routinely filing lawsuits alleging ETS exposure in every correctional institution where he is incarcerated and against virtually every DOC employee that he can name as a defendant. To be sure, a prisoner's claim that he was involuntarily exposed to ETS is not necessarily frivolous and may survive a motion to dismiss. *See Rochon v. City of Angola, La.*, 122 F.3d 319, 320 (5th Cir. 1997). Although the court should give Plaintiff the benefit of a few "free bites," he should not be allowed to file these lawsuits endlessly. The fact that all courts to have addressed Plaintiff's ETS claims have found that Plaintiff has not presented evidence to show deliberate indifference based on alleged ETS exposure is certainly relevant to indicate that Plaintiff's ETS claims are frivolous. Thus, even if perhaps his earliest ETS lawsuits could not be categorized as frivolous, it has by now become obvious that Plaintiff continues to file these ETS lawsuits as a means of harassing the courts as well as the named defendants in each suit. Plaintiff should not be allowed to continue burdening the federal courts' scarce resources with these claims. Therefore, it will be recommended that the court find that this lawsuit is frivolous. The upshot of this ruling would mean that this lawsuit will be treated as a "strike" under section 1915(g) of the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915(g). Furthermore, for the following reasons, if the court finds that this lawsuit is frivolous, then it appears that Plaintiff is now "three-

strikes" barred from bringing any further lawsuits without first paying the pre-filing fee unless he can show that he is under imminent danger of serious physical injury.

The PLRA, enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. *See* Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996). The PLRA was passed in response to what Congress perceived as the flood of meritless litigation instituted by prison inmates. *See Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir. 1997). Specifically, Congress created the so-called "three-strikes" rule under section 1915(g) of the PLRA in order to provide an economic incentive to prisoners to "stop and think" before filing a meritless complaint. *See Rogers v. Bluhm*, No. 1:07-cv-1177, 2007 WL 4404187, at *1 (W.D. Mich. Dec. 13, 2007). Section 1915(g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Here, a review of all of Plaintiff's previous filings of lawsuits (alleging ETS exposure or other claims) in the federal courts in this State indicates that if the court adopts this Recommendation then Plaintiff will have accumulated three strikes under section 1915(g), and he is therefore barred from proceeding *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious physical injury. That is,

11

federal courts have already dismissed two of Plaintiff's prior lawsuits–*Shaw v. Shalala*, 5:94-CT-886-H (E.D.N.C. Dec. 9, 1994); and *Horne v. Martin*, 5:89-CT-393-BR (E.D.N.C. Nov. 13, 1989). These actions were filed under Plaintiff's previous name of Joseph Shaw. The docket report for the *Shaw v. Shalala* case indicates that the Eastern District of North Carolina entered an order on December 9, 1994, dismissing a lawsuit brought by Plaintiff as frivolous.[6] (*See Shaw v. Shalala*, 5:94-CT-886-H (E.D.N.C. Dec. 9, 1994), docket no. 4, Order.) Next, in *Horne v. Martin*, the Eastern District of North Carolina entered an order on November 13, 1989, dismissing another lawsuit brought by Plaintiff and other prisoners as frivolous.[7] (*See Horne v. Martin*, 5:89-CT-393-BR (E.D.N.C. Nov. 13, 1989), docket no. 8, Order.) It appears, therefore, that if the court adopts this Recommendation, Plaintiff will have accumulated three strikes under section 1915(g).[8] For this reason, the court should take judicial notice that this is Plaintiff's third strike and find that in any subsequent lawsuits brought by Plaintiff, he should be required to first pay the

---

[6] The docket report for *Shaw v. Shalala* indicates that in that lawsuit Plaintiff alleged that a decision by an administrative law judge violated the Social Security Act.

[7] The docket report for *Horne v. Martin* indicates that in that lawsuit Plaintiff and other prisoners alleged that the closing of prison law libraries violated the prisoners' constitutional rights.

[8] Although the Fourth Circuit does not yet appear to have addressed the issue, other circuit courts of appeal have held that dismissals for frivolity are counted as "strikes" even if they occurred before enactment of the PLRA. *See Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin,* 144 F.3d 719, 723-26 (11th Cir. 1998); *Green v. Nottingham*, 90 F.3d 415, 417-20 (10th Cir. 1996). Thus, although the 1989 and 1994 dismissals occurred before enactment of the PLRA, they should still be counted as strikes under section 1915(g).

12

prefiling fee unless he can show that he is under imminent danger of serious physical injury.

I further find that to prevent Plaintiff from continuing to harass the courts and DOC employees, the court should enter a prefiling injunction prohibiting Plaintiff from filing any additional ETS exposure lawsuits without first obtaining leave from the court to do so. Federal courts are entrusted with the authority to "protect and effectuate" their judgments. *Ward v. Penn. N.Y. Cent. Transp. Co.*, 456 F.2d 1046, 1048 (2d Cir. 1972). "Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Moreover, "[a] district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) (quoting *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985)).

Although prefiling injunctions "must be used sparingly" and must not deny access to the courts, such measures are appropriate in "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Cromer*, 390 F.3d at 817-18 (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). In *Cromer*, the Fourth Circuit elucidated the proper circumstances and factors this court must consider in determining whether a

13

prefiling injunction is appropriate. *See Cromer*, 390 F.3d at 818. Accordingly, this court must consider:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24. In addition, if Plaintiff's conduct warrants a prefiling injunction, the court must narrowly tailor the injunction "to fit the specific circumstances at issue." *Cromer*, 390 F.3d at 818. Finally, before imposing a prefiling injunction the court must provide the litigant with notice and an opportunity to be heard on the matter. *See id.* at 819.

Applying the relevant legal standards to Plaintiff's conduct leads to the inexorable conclusion that a prefiling injunction is appropriate in this case. First, as noted, Plaintiff's history of litigation is replete with the filing of vexatious, harassing, and duplicative lawsuits. *See Cromer*, 390 F.3d at 818. Again, as noted, Plaintiff has filed numerous lawsuits alleging ETS exposure in virtually every institution in which he has been incarcerated while serving his life sentence. Moreover, he routinely names multiple defendants in his lawsuits (naming at least 100 defendants

14

in one suit alone), and he has dragged the defendants and the courts through years of needless and meritless litigation.

Second, the fact that all of the courts to have addressed Plaintiff's ETS exposure claims have found that the claims are without merit demonstrates that Plaintiff lacks a good faith basis for pursuing the litigation. *See Cromer*, 390 F.3d at 818. Rather, and again as noted, it has become clear that Plaintiff continues to file the ETS exposure lawsuits merely in order to harass the courts and the named defendants in each case.

Third, the burden on the courts and other parties resulting from Plaintiff's filings has been significant. *See Cromer*, 390 F.3d at 818. Plaintiff's meritless allegations have forced hundreds of defendants, primarily DOC employees, to respond to and defend against his allegations. Furthermore, this court and the district courts in the Eastern and Western Districts of North Carolina have expended scarce time and resources in addressing Plaintiff's numerous lawsuits. It is clear by this point that Plaintiff is abusing the system with his repeated filings of the ETS lawsuits.

Finally, this court has carefully weighed the adequacy of alternative sanctions. See *Cromer*, 390 F.3d at 818. Given Plaintiff's history of harassing filings, anything less than a prefiling injunction will allow Plaintiff to continue harassing the courts and DOC employees in each prison in which Plaintiff is incarcerated during his life sentence. For all these reasons, I find that a prefiling injunction is appropriate and

15

necessary to prevent Plaintiff from continuing to file harassing and meritless ETS exposure lawsuits.

**CONCLUSION**

For the reasons stated herein, it is **RECOMMENDED** that the court **GRANT** Defendants' motion to dismiss (docket no. 16) and **DISMISS** this lawsuit as frivolous under 28 U.S.C. § 1915(g).[9] It is further **RECOMMENDED** that this court should take judicial notice that this is Plaintiff's third strike under 28 U.S.C. § 1915(g) and find that in any subsequent lawsuits brought by Plaintiff, he should be required to first pay the prefiling fee unless he can show that he is under imminent danger of serious physical injury.

It is further **RECOMMENDED** that the court enter a prefiling injunction enjoining Plaintiff from filing any additional ETS exposure claim lawsuits, unless he first obtains leave from the undersigned or from a United States District Court of competent jurisdiction, after Plaintiff attaches copies of the courts' orders and judgments from the following cases: *Simba v. Hunt,* No. 5:98-CT-691-F, E.D.N.C.; *Simba v. Thompson*, 5:99-CT-433-F, E.D.N.C.; *Simba v. Walker*, 1:02-CV-211-03-MU, W.D.N.C.; *Simba v. Kenworthy*, 5:07-CT-3004-FL, E.D.N.C.; *Simba v. Kenworthy,* 1:07CV712, M.D.N.C. Morever, Plaintiff must submit a detailed written statement

---

[9] If this Recommendation is adopted by the district court, a frivolity dismissal will moot Plaintiff's motion (docket no. 8) that the court provide mailing addresses to putative Defendants who are no longer employed at Scotland Correctional Institution.

16

explaining why the new lawsuit, motion, or allegation is materially different from the allegations in the foregoing lawsuits. Finally, because Plaintiff has the right to be heard before the recommended prefiling injunction is entered, Plaintiff shall be given 20 days in which to submit a brief stating reasons why the court should not enter a prefiling injunction against him. Thus, no later than 20 days from the filing date of this Recommendation, Plaintiff shall submit a brief stating reasons why the court should not issue a prefiling injunction against him.

_____
Wallace W. Dixon
United States Magistrate Judge

March 27, 2008